# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TERRY S. SANCHEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-08-CV-527-XR |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On this day, the Court considered Plaintiff's Motion for Summary Judgment (Docket Entry No. 14), Defendant's Motion for Summary Judgment (Docket Entry No. 15), and the parties' responses and replies thereto. After reviewing the aforementioned documents, the Court hereby GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## Background

On January 6, 2007, Hector Javier Sanchez left the home of his friend's parents in Spring Branch, Texas, after watching a Dallas Cowboys football game on television. Mr. Sanchez drove away at approximately 10:30 P.M. to make the thirty-nine-mile drive to his home in San Antonio, Texas. After traveling twenty-three miles south-bound on U.S. Highway 281, Mr. Sanchez lost control of his vehicle, crashed, and died at the scene. Witnesses reported that he swerved into the left shoulder and then swerved sharply to the right before his car rolled over multiple times, ejecting him from the vehicle. No other vehicles were involved in the accident. The Medical Examiner

found that Mr. Sanchez had a blood alcohol level of 0.174, which is over twice the legal limit in Texas.[1]

At the time of his death, Mr. Sanchez worked for ADT, a subsidiary of Tyco International, as an installer of home security alarms. During his employment with ADT, he participated in an employee benefit plan sponsored by his employer through its purchase of a Group Accident Policy issued by Defendant Life Insurance Company of North America ("LINA") subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). The policy pays accidental death benefits for "covered accidents," which the policy defines as "a sudden, unforeseeable event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss . . . ."[2] Moreover, the policy excludes payment for an "intentionally self-inflicted [i]njury . . . ."[3]

Mr. Sanchez named his wife, Plaintiff Terry S. Sanchez, as the beneficiary of his policy payable upon his accidental death. Ms. Sanchez submitted a claim for life insurance benefits,[4] and LINA denied her claim on May 4, 2007. LINA based its denial of Ms. Sanchez's claim on the toxicology report that showed Mr. Sanchez's blood alcohol level was 0.174 g/dl, stating that Mr. Sanchez's automobile crash did "not meet the definition of Covered Accident" and that the policy excluded benefits for "intentionally self-inflicted injuries."[5]

---

[1] TEX. PENAL CODE § 49.01.

[2] Group Accident Policy, Life Insurance Company of North America, No. OK 826564, at 12 (July 1, 2002) ("Policy") (LINA0175).

[3] *Id.* at 18 (LINA0181).

[4] Claim Form (Feb. 13, 2007) (LINA00152–LINA00153).

[5] Letter from James Macom, Life Insurance Company of North America to Terry S. Sanchez (May 4, 2007) (LINA00112–LINA00115). After citing the relevant portions of the policy under which it was denying the claim, Defendant stated:

Ms. Sanchez appealed LINA's decision by letter on June 28, 2007 and July 3, 2007.[6] Ms. Sanchez included an affidavit from Joe Arthur Gutierrez, the friend of Mr. Sanchez whose parents Mr. Sanchez visited the night of the crash, with her appeal. Mr. Gutierrez declared that Mr. Sanchez's alcohol consumption did not cause any impairment that would have led him to believe it was unsafe to drive home.[7] Over two months later, LINA referred the claim to an independent forensic toxicologist,[8] who subsequently found that "Mr. Sanchez BAC and resultant impairment was a causative factor in the accident that resulted in his death."[9] LINA denied Ms. Sanchez's appeal, reiterating the reasons cited in its original denial and the independent forensic toxicologist's letter.[10]

---

[A] Covered Accident must be an unforeseen event. The hazards of driving while intoxicated are widely known and publicized. It is well-known in the general public that driving while intoxicated could result in significant bodily harm or death. In Texas, it is illegal to operate a motor vehicle with a blood alcohol level of .08% or above.

The policies also specifically exclude the payment of benefits in cases involving intentionally self-inflicted injuries. Having reviewed the available information, there is evidence to support that Mr. Sanchez's death was contributed to by his voluntary ingestion of alcohol to a level that impaired his perception and reaction time. This was an intentional act, and that act contributed to the automobile crash, that caused death.

*Id.* at 2 (LINA00113).

[6]Letter from Rey Perez, Talisman & Sciano, attorney for Terry S. Sanchez, to Renee Worst, Cigna Group Insurance (June 28, 2007) (LINA00090–LINA00092); *id.* (July 3, 2007) (LINA00085–LINA00086).

[7]Aff. of Joe Arthur Gutierrez (July 2, 2007) (LINA00087–LINA00088).

[8]Letter from Renee Worst, Life Insurance Company of North America, to Dr. Frederick W. Fochtman (Sept. 4, 2007) (LINA00046).

[9]Letter from Frederick W. Fochtman to Renee Worst, Cigna Group Insurance (Oct. 29, 2007) (LINA00040).

[10]Letter from Brian Billeter, Life Insurance Company of North America, to Rey Perez, Tinsman & Sciano, attorney for Terry S. Sanchez (Nov. 1, 2007) (LINA00035–LINA00037). Again,

Ms. Sanchez filed a second administrative appeal,[11] including a report from a toxicologist that stated: "Although judgment as well as skills may be impaired by alcohol, there is no implicit intent to harm themselves, and when motor vehicle accidents result in death, the legal ruling for manner of death is 'accident.'"[12] LINA again referred the claim to its toxicologist who issued a supplemental letter responding to Ms. Sanchez's toxicologist's report.[13] On January 18, 2008, LINA denied Ms. Sanchez's second appeal.[14]

---

LINA cited the provisions of the policy under which it denied the policy. Defendant stated: "On May 4, 2007, this claim was denied based upon the fact that Mr. Sanchez'[s] death was not an accidental death based upon the policy definition of accident as a 'sudden, unforeseeable, external event'. Furthermore, indication was provided that his death was self inflicted, and thus specifically excluded under the terms of this policy." *Id.* at 2 (LINA00036). The letter states further:
> This policy specifically defines accident as a 'sudden, unforeseeable, external event'. The dangers of driving while under the influence of alcohol a[re] well known, and thus it is reasonably foreseeable to believe that potential injury will arise out of such action. Thus loss which is resultant of impaired vehicle operation, as is the case in Mr. Sanchez'[s] motor vehicle accident, does not meet the required definition of Covered Accident in the policy. . . . Furthermore, Mr. Sanchez'[s] death was the result of his own self inflicted actions, namely driving while under the influence of alcohol.. As such death is specifically excluded under the terms of the policy. . . .
> Furthermore, no road, mechanical or weather variables were quoted as causative in the police report.

*Id.* at 3 (LINA00037).

[11]Letter from Rey Perez, Tinsman & Sciano, attorney for Terry S. Sanchez to Brian Billeter, Cigna Group Insurance (Nov. 29, 2007) (LINA00031–LINA00032).

[12]Letter from James C. Garriott to Rey Perez, Tinsman & Sciano, attorney for Terry S. Sanchez (Nov. 6, 2007) (LINA00033–LINA00034).

[13]Letter from Frederick W. Fochtman to Robert A. Killmer, Cigna Group Insurance (Jan. 3, 2008) (LINA00011–LINA00012).

[14]Letter from Robert Killmer, Cigna Group Insurance to Rey Perez, Tinsman & Sciano, attorney for Terry S. Sanchez (Jan. 18, 2008) (LINA00004–LINA00009). Again, Defendant cited the provision in the contract and stated:
> As serious injury or death are foreseeable outcomes of operation of a motor vehicle while legally intoxicated, Hector Sanchez's death would not be a *Covered Accident* as defined in the policy. . . .

**Procedural History**

On June 30, 2008, Terry S. Sanchez filed suit against Life Insurance Company of North America under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the policy in the amount of $200,000 and seeking attorneys' fees under 29 U.S.C. § 1132(g). (*See* Compl. ¶¶ 8–10 [Docket Entry No. 1].) Ms. Sanchez alleges that LINA's decision to deny benefits "was arbitrary and capricious, as the administrator did not have substantial evidence to support its decision." (*Id.*) On July 16, 2009, both parties filed motions for summary judgment. (*See* Pl.'s Mot. for Summ. J. (July 16, 2009) [Docket Entry No. 14] ("Pl.'s Mot."); Def.'s Mot. for Summ. J. (July 16, 2009) [Docket Entry No. 15] ("Def.'s Mot.").)

**Standard of Review**

*A. Summary Judgment*

Standard summary judgment rules control in ERISA cases. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party

---

> Application of the intentionally self-inflicted injury exclusion does not require that Mr. Sanchez set out to deliberately harm himself. The evidence on file supports that Mr. Sanchez did intentionally consume alcohol to a point where he reach a BAC of 0.174% and intentionally operated a motor vehicle with such impairment, despite the fact that the dangers of drinking a[nd] driving are widely publicized and stiff legal penalties are imposed for such behavior.

*Id.* at 6 (LINA00009).

will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).

*B. ERISA*

A plan participant who is denied benefits under an ERISA plan can sue to recover them. *See* 29 U.S.C. § 1132(a)(1)(B). This Court has jurisdiction to review determinations made by an ERISA

employee benefit plan. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)(en banc). A Plan Administrator's factual determinations are always reviewed for abuse of discretion; but its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect; and if there is such a grant, then review of those decisions is also for abuse of discretion. *Vercher*, 379 F.3d at 226.

Courts in the Fifth Circuit apply a two-step process to determine whether there is an abuse of discretion regarding policy interpretation. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). "First, we determine whether the Administrator and Committee's determination was legally correct. If so, the inquiry ends and there is no abuse of discretion. Alternatively, if the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion." *Stone*, 570 F.3d at 257 (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)); *see also Wildbur*, 974 F.2d at 637. If the administrator's interpretation directly contradicts the plain meaning of the plan language, however, then the administrator has abused his or her discretion.[15] *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001).

Regarding factual findings, a claims administrator does not abuse its discretion unless the decision is arbitrary and capricious. *MediTrust Fin. Serv. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). A decision is not arbitrary or capricious if it is supported by substantial

---

[15]"Courts should use this alternative approach only 'sparingly and with restraint.'" *Pando v. Prudential Ins. Co. of Am.*, 524 F. Supp. 2d 848, 853 (W.D. Tex. 2007) (quoting *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 634 (5th Cir. 2004) (Wiener, J., concurring)).

evidence. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004). For the factual findings to be supported by substantial evidence, there need only be a rational connection between the known facts and the decision or between the found facts and the evidence. *See Meditrust*, 168 F.3d at 215 ("A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828–29 (5th Cir. 1996))). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273. If the Plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail. *Id.* "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

When assessing factual questions, the district court is constrained to the evidence before the Plan administrator. *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006) (quoting *Vega*, 188 F.3d at 299). "The administrative record consists of the relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. The Court may not review evidence outside the administrative record to resolve an issue of fact. *See id.*

A conflict of interest exists where a plan administrator both evaluates claims for benefits and pays benefits claims. *Metro. Life Ins. Co. v. Glenn*, __ U.S. ___, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008) (holding that the dual role of evaluating claims and paying benefits creates a conflict of

interest). Courts should weigh the conflict of interest as a factor in determining whether there is an abuse of discretion.[16] *Id.* at 2350. The significance of the conflict "depend[s] upon the circumstances of the particular case." *Id.* at 2346. Regarding policy interpretation, if a conflict of interest exists, the Court will consider the conflict as a factor within the second stage of its abuse of discretion analysis. *Stone*, 570 F.3d at 258 ("This Circuit does not consider a conflict of interest until the second stage of the analysis because if an administrator's interpretation is legally correct 'no abuse of discretion could have occurred.'" (quoting *White v. St. Luke's Episcopal Health Sys.*, 317 Fed. Appx. 390, 392 (5th Cir. 2009))).

**Analysis**

*A. Standard of Review for this Plan*

The LINA policy grants authority to the "Insurance Company . . . to have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." Policy at 20 (LINA00183). Accordingly, review of the Administrator's construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed for abuse of discretion. *See, e.g., MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003) ("Where a plan administrator has been vested

---

[16]The Fifth Circuit Court of Appeals stated that the U.S. Supreme Court's opinion in *Metropolitan Life Insurance Company v. Glenn*, __ U.S. ___, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008), superseded the "sliding scale approach" followed by courts to assess the impact of a conflict of interest. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 n.3 (5th Cir. 2009). While the Fifth Circuit joined the majority of other circuits in no longer applying the "sliding scale approach," "much of [the] 'sliding scale' precedent is compatible with the Supreme Court's newly clarified 'factor' methodology, and *Glenn* does not supercede that precedent to the extent it reflects the use of a conflict as a factor that would alter the relative weight of other factors." *Id.*

9

with the discretionary authority to interpret a benefit plan, a district court reviews the administrator's interpretations only for abuse of discretion."). The policy gives LINA, as both the underwriter and claims administrator, the discretion to interpret the terms of the policy. This dual role results in a conflict of interest. *See Glenn*, 128 S.Ct. at 2348. In the event that the court determines that LINA's interpretation of the policy is not legally correct, then the court will consider this conflict of interest to determine whether the administrator's decision was an abuse of discretion—the second step of the abuse of discretion analysis.

*B. Relevant Plan Language*

LINA denied coverage based on two terms of the policy, and Plaintiff disputes Defendant's denial of benefits based on LINA's interpretation of those terms. (*See* Def.'s Mot. at 4; Pl.'s Mot. at 1.) The first relevant term of the policy reads:

> Covered Accident--A sudden, unforeseeable, external event that results, directly and independently of all other causes in a Covered Injury or Covered Loss and meets all of the following conditions:
> 1. occurs while the Covered Person is insured under this Policy;
> 2. is not contributed to by disease, sickness, mental or bodily infirmity;
> 3. is not otherwise excluded under the terms of this Policy.

Policy at 12 (LINA00175). LINA also denied coverage based on a clause in the policy that excludes coverage for "intentionally self-inflicted [i]njury, suicide or any attempt threat while sane or insane." Policy at 18 (LINA00181).

*C. LINA's Interpretation of Policy Terms*

Plaintiff submits that Defendant abused its discretion by erroneously interpreting an exclusionary provision contained within the Plan. (Pl.'s Mot. at 1.) Specifically, Ms. Sanchez argues that "LINA's interpretation of the definition of 'covered accident' in the policy, as well as its interpretation of the intentionally self-inflicted injury exclusion, contradict the plain language of the policy." (*Id.*) Plaintiff contends that LINA's interpretation of the word "unforeseeable" is incorrect and states that the reasoning employed by the Fifth Circuit in *Todd v. AIG Life Insurance Company*, 47 F.3d 1448 (5th Cir. 1995), should apply.[17] LINA contends, given Mr. Sanchez's actions prior to driving his automobile, "that his subsequent accident was not unforeseeable, *i.e.*, it was capable of being reasonably anticipated or expected." (Def.'s Resp. to Pl.'s Mot. for Summ. J. 3 (July 27, 2009) [Docket Entry No. 21] ("Def.'s Resp.").) LINA states that the record did not indicate "any weather conditions, road deficits, or mechanical failures [that] contributed to the crash." (Def's Mot. at 7.)

---

[17]Plaintiff's reliance on *Todd v. AIG Life Insurance Company*, 47 F.3d 1448 (5th Cir. 1995), is misplaced. Unlike the policy at issue in *Todd*, the policy here gives the administrator the authority to interpret plan provisions. *See* Policy at 20 (LINA00183). There being no such grant of authority in *Todd*, the court "accord[ed] no deference to the administrator's ultimate determination." *Todd*, 47 F.3d at 1451.

In *Todd*, the Fifth Circuit held that for death under an accidental death policy to be deemed an accident, "it must be determined (1) that the deceased had a subjective expectation of survival, and (2) that such expectation was objectively reasonable, which it is if death is not substantially certain to result from the insured's conduct." *Todd*, 47 F.3d at 1456. No cases in the Fifth Circuit have applied the test from *Todd* to drunk driving. However, courts in other circuits have applied the test of *Wickman v. Northwestern National Insurance Company*, 908 F.2d 1077 (1st Cir.)*, cert denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed. 586 (1990)—upon which the test in *Todd* is based—to determine that alcohol-related deaths are not "accidental." *Stamp v. Metro. Life Ins. Co.*, 531 F.3d 84, 89–90 (1st Cir. 2008) ("Applying *Wickman*, federal courts have, with near universal accord, upheld plan administrators' determinations that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA." (internal quotation marks omitted) (quoting *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 344 (4th Cir. 2006))); *see also Todd*, 47 F.3d at 1456 (stating that test developed by district court is based on "the essence of *Wickman*.").

LINA's decision does not directly contradict the relevant plan language. The policy does not require coverage that LINA has denied. As a result, the Court will evaluate the relevant language of the policy and this dispute pursuant to the two-part test to determine whether the Defendant committed an abuse of discretion.

To determine whether a defendant's interpretation is legally correct—the first step in the two-part test—a court should consider "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Ellis*, 394 F.3d at 270 (quoting *Wildbur*, 974 F.2d at 638). If the court determines that the defendant's interpretation was legally correct, then the court need not conduct the second stage of the analysis. *Id.*

*1. Denial Based on the Definition of "Covered Accident"*

As previously stated, LINA denied coverage on the basis that Mr. Sanchez's death did not meet the definition of "Covered Accident" as defined in the policy. Neither party briefed or provided evidence of the third element of the test—the unanticipated costs resulting from different interpretations of the plan. As to the first element—whether the administrator has given the plan a uniform construction—Plaintiff argues that LINA's interpretation of covered accident would "eviscerate[]" special coverages. (Pl.'s Mot. at 15.) It is unclear, however, how LINA's interpretation of covered accident would eviscerate coverage such as "national guard or armed forces reserve coverage," "pilot coverage," or "war risk coverage." The contract contains these categories as LINA establishes additional terms to qualify to obtain coverage for events that occur within these categories. Consequently, LINA's interpretation of the contract does not render the terms

meaningless.

By its express terms, the policy does not preclude coverage for death resulting from driving while intoxicated or driving while under the influence of alcohol. The plain language of the policy, however, defines a "Covered Accident" as one that requires a "sudden, unforeseeable, external event." LINA defines "unforeseeable" as "not capable of being reasonably anticipated or expected" and contends that, given Mr. Sanchez's actions, "his subsequent accident was not unforeseeable, *i.e.*, it was capable of being reasonably anticipated or expected." (Def.'s Resp. at 3.) Despite the unfortunate circumstances underlying this case, the law is clear that the reasonable interpretation of an ambiguous provision is entitled to deference. *See e.g., Gosselink*, 272 F.3d at 729 n.8 (noting that though "the relevant language at issue is hardly a model of clarity . . . [it] does not require the Plan to be interpreted in the manner espoused by the Plaintiffs."). Here, under the deference the Court is required to afford, the Court finds that Defendant's interpretation of the policy is consistent with a reading of the plan to meet the second element of the test. Given Mr. Sanchez's level of intoxication, his operation of a motor vehicle in that condition could make an accident foreseeable.[18]

---

[18]Moreover, the policy defines a "covered accident" as one that is "sudden" and "external." In its denial of benefits, LINA cited the entire provision regarding the definition of "Covered Accident" and stated that there is no evidence that Mr. Sanchez's accident was caused by an external event. *See* Letter from Brian Billetter to Rey Perez at 3 (LINA00037). Given the level of deference that this Court must provide to Defendant, the Court is forced to defer to LINA's citation of this provision and its finding that no external event caused Mr. Sanchez's accident aside from his intoxication.

The Court is particularly disturbed by the potentially arbitrary and capricious focus on the terms "unforeseeable" and "foreseeable." Defendant argues that given Mr. Sanchez's intoxication, an accident was foreseeable. Relying only on foreseeability presents the opportunity for Defendant to deny coverage for risky, but legal, activities (*e.g.*, standing on a ladder, driving an automobile, playing basketball). Rather than provide a sound, clear explanation of the basis of its finding, LINA is very close to providing conclusory, poorly-considered explanations to justify its decision. The Court is concerned that Defendant is close to abusing the deferential legal standard it is afforded to provide explanations that fall within the rubric of the legal standard but outside the intent of ERISA.

As a result, LINA's interpretation is a legally correct interpretation and not an abuse of discretion.

*2. Denial Based on the "Intentionally Self-Inflicted Injury" Exclusion*

LINA also based its denial on the "intentionally self-inflicted [i]njury" exclusion. As an exclusion, this term would apply after the determination that an accident met the requirements to be otherwise covered by the policy. Defendant's interpretation of the policy regarding the provision related to intentionally self-inflicted injuries is far from a fair reading of the policy and is a gross misreading of its own policy, with the apparent goal of bolstering the reasons for its denial of coverage. Defendant argues that Mr. Sanchez "voluntarily inflicted an injury of a chemical nature—depressing his nervous system—by voluntarily consuming an excessive amount of alcohol." (Def.'s Mot. at 10; Def's Resp. at 5.) LINA's interpretation essentially creates a per se rule that bars coverage for any accident that results after the consumption of alcohol, which if LINA intended, it would or should have stated explicitly. A simple reading of the policy exclusion shows that it pertains to suicide with "intentionally inflicted injuries" pertaining to suicide attempts. Moreover, the policy would exclude injuries sustained from a hypothetical game of "Russian Roulette" in which the participant takes a gun loaded with a single bullet and pulls the trigger, playing the odds that the chamber is empty for his pull of the trigger. Although the participant may not have the requisite intent to commit suicide, the participant is cognizant of the high degree of risk that fatal injury will result from losing the game.

Rather than analogizing the act of drinking excessively and then operating a motor vehicle to such a dangerous game, Defendant justifies its denial based on this provision by claiming that Mr. Sanchez "voluntarily inflicted an injury of a chemical nature—depressing his nervous system—by

voluntarily consuming an excessive amount of alcohol."[19] Such an interpretation leads to absurd results, all of which would provide Defendant with a *carte blanche* to deny insurance coverage based on this provision. This interpretation of the self-inflicted injury provision creates a per se rule that bars coverage for any accident that results after an individual has consumed almost any medication that injures or alters the chemical nature of the body. For example, an individual who consumes an over-the-counter medication that may cause her to become tired would be barred from coverage for any accident because she has voluntarily inflicted an injury of a chemical nature by consuming the medication. Surely, this cannot be the intent of the policy language, yet, this is precisely the interpretation being provided by LINA. Consequently, LINA's interpretation of this provision is not legally correct.

With LINA's interpretation being legally incorrect, the Court must determine whether the administrator abused his discretion. "Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992). Neither party has briefed nor provided evidence regarding these factors. While this Court recognizes that driving while intoxicated is an illegal act and inherently dangerous to the driver and innocent bystanders, the focus of this inquiry is the language of LINA's policy and the

---

[19]LINA's final letter to Plaintiff stated that it was basing its denial on Mr Sanchez's intentional consumption of alcohol *and* intentional operation of a motor vehicle in such a state of impairment. Letter from Robert Killmer to Rey Perez at 6 (LINA00009). LINA does not explain that both actions—drinking and driving—warranted exclusion until this response to Ms. Sanchez's appeal. Moreover, this is *not* the explanation provided to this Court in the briefs filed on behalf of LINA.

interpretation of that language by the policy administrator. If anything, LINA's interpretation would seem to add terms and exclusions to the policy that 1) the policy does not contain and 2) that Defendant could have easily included explicitly. Neither party, however, briefs nor provides evidence that would allow this Court to conduct the second stage of the analysis to determine whether there is an abuse of discretion even though the interpretation provided by Defendants would seemingly allow the Court to infer bad faith on the part of the LINA.

D. *LINA's Factual Determination*

Plaintiff argues that LINA, as both underwriter and claims administrator of the policy, has a conflict of interest in evaluating Ms. Sanchez's claim for benefits. (Mot. at 8.) As previously noted, this dual role creates a conflict of interest. *See Glenn*, 128 S.Ct. at 2348. The Court is required to consider this conflict as a factor in its review of the administrator's factual findings. *Id.*; *Holland*, 576 F.3d at 247. Defendant responds that the Plaintiff has provided no evidence beyond Defendant's dual role as an administrator and insurer to show a conflict of interest. (Resp. at 2.) As Plaintiff has not provided evidence merely beyond the Defendant's dual role as administrator and insurer, the Court must review the benefit determination with "only a modicum less deference" than it would otherwise employ. *Corry*, 499 F.3d at 398.

In this Court's opinion, there is substantial evidence in the administrative record to support LINA's conclusion that Mr. Sanchez's death resulted from driving while intoxicated. Mr. Sanchez was the driver and sole occupant of the vehicle involved in the accident on U.S. Highway 281. LINA00158–LINA00161. The autopsy report declared that Mr. Sanchez's blood alcohol level was 0.174 g/dl ethanol. LINA00138. Witnesses reported that Mr. Sanchez swerved to the left shoulder

and then sharply to the right. LINA00159.

LINA states that it reviewed the policy, LINA00164–LINA00199, including the Certificate of Death, LINA00156; the Texas Peace Officer's Crash Report, LINA00158–LINA00161; and the Bexar County Medical Examiner's Autopsy Report, LINA00132–LINA00138. Letter from James Macom, Cigna Group Insurance, to Terry S. Sanchez (May 4, 2007) (LINA00112–LINA00115). In evaluating Ms. Sanchez's appeals of its decision, LINA considered the independent review of Frederick W. Fochtman, Ph.D, who evaluated the Certificate of Death, Texas Peace Officer's Crash Report, and Bexar County Medical Examiner's Office Autopsy Report. Letter from Frederick W. Fochtman to Renee Worst, Cigna Group Insurance (Oct. 29, 2007) (LINA00040). Considering Mr. Sanchez's blood alcohol level, Dr. Fochtman concluded:

> A BAC of 0.174% will cause an individual to be impaired to the extent that they would not be able to drive safely. Regardless of a person's experience with alcohol and tolerance, at a BAC of 0.174% impairment will be manifested by poor judgment, increased reaction time, muscle incoordination, loss of visual acuity, and increased risk taking. Mr. Sanchez'[s] accident is consistent with his being under the influence of alcohol and impaired.
> It is my opinion with a reasonable degree of scientific certainty that Mr. Sanchez'[s] BAC and resultant impairment was a causative factor in the accident that resulted in death.

*Id.*

As part of Ms. Sanchez's second appeal, LINA again considered a second evaluation by Dr. Fochtman. Dr. Fochtman considered Ms. Sanchez's letter appealing LINA's denial of her first appeal, LINA00019–LINA00020; a letter from an independent toxicologist retained by Ms. Sanchez, LINA00021–LINA00022; and an affidavit from Joe Arthur Gutierrez who was with Mr. Sanchez the night Mr. Sanchez died, LINA00024–LINA00025. Dr. Fochtman responded to Ms. Sanchez's toxicologist's letter, stating: "[E]ven Dr. Garriott [the toxicologist retained by Ms. Sanchez] recognizes that a person with a BAC of 0.174% is at a greater risk of having an accident due to

impairment of driving-related skills. As I recall from the report of the accident, there was no apparent reason provided for his swerving his vehicle and rolling over, therefore a strong indication of driver error." Letter from Frederick W. Fochtman to Robert A. Killmer, Cigna Group Insurance (Jan. 3, 2008) (LINA00011–LINA00012). LINA cited Dr. Fochtman's report and responded that the "fact that Mr. Sanchez was able to complete the first 20+ miles of his journey without apparent incident does not alter the fact that evidence supports that he was impaired by alcohol." Letter from Robert Killmer, Cigna Group Insurance, to Rey Perez, Tinsman & Sciano, attorney for Terry S. Sanchez (Jan. 18, 2008) (LINA00004–LINA00009).

There is no evidence in the record to suggest any other possible cause of death. The Medical Examiner's report shows that Mr. Sanchez had a blood alcohol level over two times the legal limit. The Texas Peace Officer's Crash Report does not provide any indication of another cause of the accident. Moreover, both available reports from independent toxicologists discuss the impaired state of an individual with a blood alcohol level of 0.174. Even considering the dual role performed by LINA as both administrator and underwriter, and without more evidence to indicate a stronger conflict of interest, the Court concludes that there is substantial evidence in the record to support Defendant's factual findings.

## Conclusion

While LINA's interpretation of the self-inflicted injury exclusion of its policy is legally incorrect, the Court is unable to determine, pursuant to the second stage of the abuse-of-discretion analysis conducted in this circuit, whether the interpretation constitutes an abuse of discretion. However, LINA's interpretation of the definition of "Covered Accident" is legally correct and its

factual determinations do not constitute an abuse of discretion. Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED Accordingly, because there are no material facts in dispute, this Court renders judgment in favor of Defendant Life Insurance Company of North America.

It is so ORDERED.

SIGNED this 6th day of October, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE